IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ERIE DIVISION

EDWARD MAJOR,                                      )
                                                   )
                    Plaintiff                      )
                                                   )      CASE NO. 1:21-CV-00068-RAL
vs.                                                )
                                                   )
REKHA HALLIGAN, MEDICAL                            )      RICHARD A. LANZILLO
PHYSICIAN, SCI ALBION; MICHAEL J.                  )      CHIEF UNITED STATES
EDWARDS, REGISTERED NURSE, SCI                     )      MAGISTRATE JUDGE
ALBION; JAMES OCHS, R.H.U. LT., SCI                )
ALBION; PAUL ENNIS, DEPUTY                         )
SUPERINTENDENT, SCI ALBION;                        )      MEMORANDUM OPINION ON
MICHAEL CLARK, FACILITY                            )      DEFENDANTS HALLIGAN AND
MANAGER, SCI ALBION; SETH                          )      HERBIK'S MOTION TO DISMISS, OR IN
ERICKSON, SDU UNIT MANAGER, SCI                    )      THE ALTERNATIVE, FOR SUMMARY
FAYETTE; WILLIAM NICHOLSON,                        )      JUDGMENT
HEALTH CARE ADMINISTRATOR, SCI                     )
GREENE; LIEUTENANT JOHN DOE, SCI                   )      IN RE: ECF NO. 109
ALBION MEDICAL PERSONNEL;                          )
SERGEANT  OHRMAN, MICHAEL                          )
HERBIK, JAMES BRIGHT, LIEUTENANT                   )
MATIYASIC, CORRECTIONAL OFFICER                    )
CARNS,                                             )
                                                   )
                    Defendants                     )

I.      Introduction

        Plaintiff Edward Major ("Major") initiated this action alleging that his civil rights were

violated when he was provided substandard medical treatment while in the custody of the

Pennsylvania Department of Corrections ("DOC").  He names two medical providers, Dr. Rekha

Halligan ("Halligan") and Dr. Michael Herbik ("Herbik"), as defendants.  ECF No. 98.  Also

named as defendants are various employees of the DOC at three state correctional institutions:

SCI-Albion, SCI-Fayette and SCI-Greene.  *Id.*

1

Pending before the Court is a motion to dismiss or alternatively for summary judgment filed by Halligan and Herbik.  ECF No. 109.  All parties have consented to the jurisdiction of a United States Magistrate Judge in these proceedings.  *See* ECF Nos. 10, 16, 111; 28 U.S.C. § 636, *et seq*.  For the reasons explained herein, the motion will be granted in part and denied in part.

II.     Procedural and Factual Background

*The Factual Background*

Inasmuch as Halligan and Herbik are the only defendants who have moved to dismiss, the Court relates only the factual background relevant to Major's claims against them.  Major alleges that on May 7, 2017, he began experiencing chest pains.  ECF No. 98, ¶ 23.  He went to the infirmary at SCI-Albion where he was treated by Defendant Halligan.  *Id*., ¶ 26.  Halligan diagnosed him as suffering from severe dehydration and ordered IV fluids.  *Id*, ¶ 27.  Major remained in the infirmary for three days.  *Id*., ¶ 30.  On May 10, Major continued to complain of severe chest pain.  *Id*., ¶ 31.  Halligan allegedly dismissed his complaints, remarking that "at least you look better."  *Id*.  A nurse in the infirmary ordered an electrocardiogram (EKG), which revealed that Major was suffering a heart attack.  *Id*., ¶ 32.

Major was subsequently transferred to UPMC Hamot Hospital, where he was treated for a coronary artery blockage with the insertion of a drug-eluting stent.  *See* ECF No. 98-1, pp. 2-4 (medical record).  Major claims that he received substandard care upon his return to SCI-Albion.  Among his specific allegations, Major contends Halligan denied him his prescribed nitroglycerin tablets.  *Id*., ¶ 40.

In August of 2019, Major was transferred to SCI-Fayette, where Defendant Herbik is the "Director of Healthcare." *Id.*, ¶ 40; *see also id.*, ¶14 . In June of 2020, Major was transferred from SCI-Fayette to SCI-Greene. *Id.*, ¶ 80. He was transferred back to SCI-Fayette in September of 2021. *Id.*, ¶ 98. Major alleges that upon his return to SCI-Fayette, Defendant Herbik "refused to provide [him] with his nitroglycerin pills." *Id.*, ¶ 101.

### *An Abbreviated Procedural History*

Although this case has an extensive procedural history, it need not be recounted here. For present purposes, Major's Second Amended Complaint—the operative pleading—was docketed on October 27, 2022.[1] ECF No. 98. He brings four claims: an excessive force claim against Defendant John Doe; a deliberate indifference claim against Defendants Halligan, Edwards, Nicholson, Herbik, and Bright; a deliberate indifference claim against Defendants Ochs, Clark, Matiyasic, and John Doe; and a retaliation claim against Defendants Clark, Ennis, Erickson, and Ohrman. *See id.*, *generally*. The DOC Defendants have filed an Answer to the Amended Complaint. *See* ECF No. 106. Halligan and Herbik have moved to dismiss Major's deliberate indifference claim (Count II) against them pursuant to Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment pursuant to Fed. R. Civ. P. 56 based on the affirmative defense of failure to exhaust administrative remedies. *See* ECF No. 109.

In moving in the alternative for summary judgment, however, Halligan and Herbik initially neglected to file a concise statement of material facts as required by our Local Rule 56(B)(1). *See* ECF No. 112. They subsequently corrected this deficiency. *See* ECF No. 114.

---

[1] Upon the appointment of pro bono counsel, Major was granted leave to file an Amended Complaint. The Court commends the *pro bono* representation afforded to Major by Attorneys Kira M. Geary, David R. Osipovich, and Jonathan Vaitl and thanks them for their able representation.

Major filed a brief in opposition to Halligan and Herbik's motion as well as a responsive concise statement of material facts. *See* ECF Nos. 116, 117. Halligan and Herbik filed a reply brief. *See* ECF No. 118.

III.    Standards of Decision

The moving Defendants' motion implicates two decisional standards, the standard for a motion to dismiss pursuant to Rule 12(b)(6) and the standard for a  summary judgment motion pursuant to Rule 56.

*Motions to Dismiss*

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  In deciding a Rule 12(b)(6) motion to dismiss, the court must accept as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *See U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).  The "court[] generally consider[s] only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim" when considering the motion to dismiss. *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir.1997)).

In making its determination under Rule 12(b)(6), the court is not opining on whether the plaintiff is likely to prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing 5C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)).  *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Furthermore, a complaint should only be dismissed pursuant to Rule 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

While a complaint does not need detailed factual allegations to survive a motion to dismiss, a complaint must provide more than labels and conclusions. *See Twombly*, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts alleged in the complaint. *See California Pub. Employee Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the court accept legal conclusions disguised as factual allegations. *See Twombly*, 550 U.S. at 555; *McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). Put another way, in assessing a motion to dismiss, while the Court must view the factual allegations contained in the pleading at issue as true, the Court is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007).

### The Summary Judgment Standard

Rule 56(a) requires the court to enter summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under this standard "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A disputed fact is "material" if proof of its

existence or nonexistence would affect the outcome of the case under applicable substantive law. *Anderson*, 477 U.S. at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether a genuine issue of material fact remains for trial, the court must view the record and all reasonable inferences to be drawn therefrom in favor of the nonmoving party. *Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988). To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. Instead, once the movant satisfies its burden of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party must go beyond his pleadings with affidavits, depositions, answers to interrogatories or other record evidence to demonstrate specific material facts that give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

Further, under Rule 56, a defendant may seek summary judgment by pointing to the absence of a genuine fact issue on one or more essential claim elements. The Rule mandates summary judgment if the plaintiff then fails to make a sufficient showing on each of those elements. When Rule 56 shifts the burden of production to the nonmoving party, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. *See Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992).

IV.    Discussion and Analysis

*Major's Claims Against Halligan and Herbik and the Defendants' Motion*

Count II of the Amended Complaint asserts an Eighth Amendment claim pursuant to 42 U.S.C. § 1983 against Halligan and Herbik based on each's alleged deliberate indifference to his serious medical needs. *See* ECF No. 98, pp. 18-19.  Major's claim against Halligan  is based on two related factual assertions.  First, he claims that Halligan responded with deliberate indifference to his medical needs when he presented to the SCI-Albion medical department with symptoms of a heart attack.  *See id.,* ¶ 135(a)-(b).  Second, Major asserts that Halligan unreasonably delayed providing him with his prescribed heart medication upon his return to SCI-Albion.  *Id.,* ¶ 135(c).  Major's Eighth Amendment claim against Herbik is based solely on his alleged delay in providing him with his heart medication at SCI-Fayette.  *See id.* ¶ 135(c); *see also id.,* ¶ 101.

The moving Defendants' motion presents four distinct arguments.  As a motion to dismiss, they argue that Major has failed to allege facts sufficient to state an Eighth Amendment claim; that his claims against Halligan are barred by the statute of limitations; and that the claims against Halligan should be dismissed based on untimely service.  *See* ECF No. 110, pp. 5-18.  In moving in the alternative for summary judgment, they contend that the record establishes that Major failed to exhaust his administrative remedies regarding the claims against them.  *Id.,* pp. 18-28.  In support of this argument, Halligan and Herbik have submitted Major's grievance record and the declaration of Keri Moore, Assistant Chief Grievance Officer in the Secretary's Office of Inmate Grievances and Appeals ("SOIGA").  *See* ECF Nos. 109-4 (grievance record); 114-2 (declaration).

The requirement that prisoners exhaust their administrative remedies is a "non-jurisdictional prerequisite to ... bringing suit and when raised by a defendant ... constitutes a threshold issue to be addressed by the court." *El v. Matson*, 2023 WL 4134723, at *7 (W.D. Pa. June 22, 2023) (citing *Rinaldi v. United States*, 904 F.3d 257, 265 (3d Cir. 2018)). Accordingly, the Court begins its discussion and analysis with the Defendants' contention that Major failed to exhaust his administrative remedies.

### The Prison Litigation Reform Act

Under the PLRA, "a prisoner is required to pursue all avenues of relief available within the prison's grievance system before bringing a federal civil rights action concerning prison conditions." *Ansley v. Wetzel*, 2023 WL 5672312 at *3 (M.D. Pa. Sep. 1, 2023) (citing *Booth v. Churner*, 206 F.3d 289, 291 (3d Cir. 2000)). *See also* 42 U.S.C. § 1997e(a). This exhaustion requirement applies to all claims relating to prison life which do not implicate the duration of the prisoner's sentence. *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Further, the statute requires "proper exhaustion," meaning that a prisoner's completion of the administrative review process must also satisfy the applicable procedural rules of the prison's grievance system. *Fennell v. Cambria County Prison*, 607 Fed. Appx. 145, 149 (3d Cir. 2015). A procedurally defective administrative grievance, even if pursued to final review, precludes action in federal court. *Id.* Failure to exhaust administrative remedies under the PLRA is an affirmative defense that a defendant must be plead and prove. *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

Proper exhaustion of administrative remedies under the PLRA requires completion of the administrative review process in accordance with the relevant procedural rules, which are not defined by the PLRA, but by the prison's internal grievance process. *See Jones v. Bock*, 549 U.S. 199, 218 (2007). Thus, the level of detail that will be necessary for an inmate to comply

8

with the administrative review process "will vary from system to system and claim to claim[.]" *See id.* The DOC's primary inmate grievance procedures are set forth in its policy DC-ADM 804. This policy permits "any inmate to seek review of problems that may arise during the course of confinement." *Ansley*, 2023 WL 5672312, at *3 (citing 37 Pa. Code § 93.9 (a)). After attempting to resolve problems informally, an inmate may seek relief through DC-ADM 804's three-step grievance and appeals process. *See Smith v. Sec. of Pa. Dept. of Corrections*, 2018 WL 279363, at *2 (W.D. Pa. Jan. 3, 2018). First, the inmate must submit a written grievance to the institution's Grievance Coordinator for initial review within fifteen days of the incident or events on which the claims are based. *Id.* The grievance must "legibly set forth all facts and identify all persons relevant to his claim …." *Smith*, 2018 WL 279363, at *2 (citing *Spruill v. Gillis*, 372 F.3d 218, 233 (3d Cir. 2004)). Second, if the Grievance Coordinator issues a timely response denying the grievance in whole or in part, the inmate must appeal the initial review decision to the Facility Administrator for a second level of review. *Id.* Finally, if the inmate remains unsatisfied following the second level review decision, he must file an appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"). *Id.* All three stages of review must be completed before a grievance is deemed administratively exhausted for purposes of the PLRA. *See Booth*, 206 F.3d at 293 n.2 (outlining Pennsylvania's grievance review process.).

The three-stage grievance process mandated by DC-ADM 804 applies to most, but not all, concerns and complaints regarding the conditions of an inmate's confinement. For example, the DOC has separate policies and procedures for reporting incidents of prison rape, sexual abuse, or sexual harassment. *See Sarvey v. Wetzel*, 2018 WL 1419072, at *3 (W.D. Pa. Mar. 26, 2018) (citing DC-ADM 008 for allegations regarding sexual assault). In addition, DC-ADM 804 itself recognizes that its three-stage grievance process is not appropriate to address certain

emergent prisoner needs.  DC-ADM 804 specifically acknowledges that while the grievance procedure is "intended to deal with a wide range of issues, procedures, or events that may be of concern to an inmate,...[i]t is not meant to address incidents of an urgent or emergency nature ...".  DC-ADM 804, Section 1(A)(2).  Instead, the policy instructs, "When faced with an incident of an urgent or emergency nature, the inmates shall contact the nearest staff member for immediate assistance." *Id.*  The Court of Appeals for the Third Circuit has defined "incidents of an urgent or emergency nature" as those involving a "sudden and serious event" that "require immediate attention." *Downey v. Pa. Dep't Corr.*, 968 F.3d 299, 306 (3d Cir. 2020).  In *Downey*, for example, the Court concluded that "because of the prisoner's severe medical condition requiring immediate care, he was only required to contact the nearest staff member for immediate assistance," and he did not need to submit a grievance. *Id.* at 307.  Thus, inmates dealing with urgent situations are not required to file a grievance. *See, e.g., Jackson v. Megahan,* 2022 WL 889944, at *5 (M.D. Pa. Mar. 25, 2022) (citing *Downey*, 968 F.3d at 307).  Furthermore, "[a]n inmate need exhaust only such administrative remedies as are 'available.'" *Ross v. Blake*, 578 U.S. 632, 648 (2016) (quoting § 1997e(a)).  Administrative remedies are considered unavailable if: (1) they "operate[ ] as a simple dead end"; (2) they are "incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *See id.* at 643-44.

*Major's Grievance History: Exhausted Grievances*

Halligan and Herbik base their motion for summary judgment on Major's grievance records and the declaration of Keri Moore, SOIGA's Assistant Chief Grievance Officer.  They argue that as relates to the claims against them, Major failed to pursue any grievance through final appeal to SOIGA. *See* ECF No. 110, p. 18.  The record demonstrates that Major filed

twenty-five grievances while incarcerated at SCI-Albion, SCI-Fayette, and SCI-Greene.  Major

only appealed five of these to SOIGA for final review.[2]  Of these five exhausted grievances, only

one concerned Major's allegations that he was denied proper medical care.

While at SCI-Albion, Major exhausted one grievance, Grievance No. 797339.  Major

submitted this grievance on April 18, 2019.  In that grievance, Major complained that in

February of 2019, he was housed in a cell "wearing nothing but an orange jumpsuit."  ECF No.

109-3, p. 2.  He stated that he "was left cold inside of a dimly lite [sic] cell with no mattress, no

sheets, no blankets."  *Id.*  On final review, SOIGA upheld the denial of Major's grievance.  *Id.*,

p. 1.

During his incarceration at SCI-Fayette, Major exhausted four grievances.  On

October 19, 2021, he submitted Grievance No. 950592 in which he complains that after his

transfer from SCI-Albion, he was placed in a "concrete cell" and quarantined despite having

been vaccinated.  *Id.*, p. 49.  He appealed the denial of this grievance to SOIGA, which affirmed

the denial on December 21, 2021.  *Id.*, p. 48.  Then, on November 5, 2021, Major submitted

Grievance No. 953392.  Here, he complained that despite informing prison personnel that he

should not be exposed to OC spray due to his medical status, OC was discharged in a

neighboring cell.  *Id.*, p. 57.  SOIGA upheld the denial of this grievance on February 9, 2022.

*Id.*, p. 56.  On November 8, 2021, Major submitted Grievance No. 953596.  He claimed that a

few days earlier, he had vomited blood and that a corrections officer "laughed and joked" about

his request for medical assistance.  *Id.*, p. 65.  Major appealed the denial of this grievance to

---

[2] Defendants' motion states that Major only exhausted four of his 25 grievances.  But at the time the motion was filed, Major's Grievance No. 993093 remained in process.  The record demonstrates that he did appeal the denial of this Grievance to SOIGA and that, on October 19, 2022, SOIGA solicited input from another Central Office Bureau (Health Care).  *See* ECF No. 109-4, p. 98.  As related in Moore's declaration, SOIGA's final review was completed on December 19, 2022, the same day Halligan and Herbik filed the instant motion.  *See* ECF No. 114-2, p. 5.

SOIGA, which affirmed on January 20, 2022. *Id.*, p. 64. And finally, on August 10, 2022, Major filed Grievance No. 993093. ECF No. 109-4, p. 103. This grievance complained that Major had been denied proper medical care because of a delay in providing him his prescribed nitroglycerin pills after he had been transferred back to SCI-Fayette. *Id.* SOIGA affirmed the denial of this grievance on December 19, 2022. *See* ECF No. 114-2, p. 5 (declaration of K. Moore).

### *The Claims Against Halligan*

None of the exhausted grievances identify Halligan by name or title. Section 11(d) of DC-ADM 804 mandates that the inmate "shall identify individuals directly involved in the events" upon which the inmate bases his grievance. *Trainor v. Wellpath*, 2023 WL 2603196, at *14 (W.D. Pa. Mar. 22, 2023) (citations omitted). *See also Jackson v. Carter*, 813 Fed. Appx. 820, 823 (3d Cir. 2020). Because the identification requirement is mandatory, "in the absence of any justifiable excuse, a Pennsylvania inmate's failure to properly identify a defendant constitute[s] a failure to properly exhaust his administrative remedies under the PLRA." *Williams v. Pa. Dep't of Corr.*, 146 Fed. Appx. 554, 557 (3d Cir. 2005) (failure to identify defendants in grievances "means that [plaintiff] failed to exhaust his administrative remedies in accordance with Pennsylvania's grievance process and the PLRA"). *See also Baez v. Froelich*, 2023 WL 131432, at *7 (W.D. Pa. Jan. 9, 2023). Although one of the exhausted grievances, Grievance No. 993093, does concern the distribution of Major's nitroglycerin medication, it did not implicate Halligan because it challenged events that took place years later while Major was incarcerated at SCI-Fayette. Halligan was employed at SCI-Albion and is not alleged to have had any involvement in treating Major or dispensing medication at SCI-Fayette. *See* ECF No. 109-4, p. 103.

Although Grievance No. 680083 implicated treatment provided by Halligan following his discharge from UPMC-Hamot return to SCI-Albion on May 15, 2017, Major did not appeal the denial of this grievance to SOIGA.  In this grievance. Major complained that despite being prescribed "nitro" while at the hospital, he had not received his medication.  *See* ECF No. 109-4, p. 106.  Major stated: "I have been back since May 15th and I still don't have my 'nitro.'"  *Id.* He indicates that he had spoken with "medical department nurses" but that his requests were ignored.  *Id.*  In denying this grievance, the initial review response stated that "Dr. Halligan ordered the consult for [Major] to be seen by the cardiologist as a follow up and [that he was] seen on 5/23/17," and that "Dr. Halligan reviewed the consult from 5/23/17 and ordered the medications and is treating you appropriately."[3]   ECF No. 104-4, p. 104.  As reflected in the initial review response, Halligan provided Major with his medications after he filed the grievance and Major elected not to appeal the denial of the grievance.

Major apparently concedes that none of his exhausted grievances included his claims against Halligan.  Instead, he argues that because his circumstances constituted an "incident of an urgent or emergency nature" within the meaning of DC-ADM 804, he was not required to utilize the three-stage grievance process to exhaust those claims. ECF No. 116, p. 19.

*Major's claim against Halligan concerning his medical care at SCI-Albion prior to his hospitalization involved an incident of an urgent or emergency nature concerning which DC-ADM did not require that he file a grievance.*

If Major is correct that his claims against Halligan arose out of an incident of an urgent or emergency nature, then DC-ADM 804 merely required that he "contact the nearest staff member

---

[3] Although Major's grievance did not mention Halligan by name, the initial review response confirmed that prison personnel understood that it implicated Halligan as evidenced by the Grievance Officer's reliance on Halligan's actions in denying the grievance.  Thus, Major grieved Halligan's medication delay in Grievance No. 680083, but he did not appeal the denial of this grievance to SOIGA for final review.

for immediate assistance" to exhaust his administrative remedies.   Examples of incidents of an urgent or emergency nature include where an inmate has been assaulted and rushed to the hospital in a helicopter, *see Warrington v. Pa. Dep't Corr.*, 2022 WL 525846, at *4 (M.D. Pa. Feb. 22, 2022), and where an inmate's glaucoma was so severe that prompt action was required to prevent permanent vision loss. *See Downey*, 968 F.3d at 307.

The Court finds that Major's presentation to Halligan with symptoms of a heart attack constituted an incident of an urgent or emergency nature and thus excused him from filing a grievance to exhaust this claim against Halligan.[4]  Major alleges that he was experiencing "severe chest pain, lockjaw, and nausea, and that he felt cold to the touch while profusely sweating." ECF No. 98, ¶ 26.  Such symptoms are indicative of a heart attack and, even to a layperson, evidence an urgent medical need. *See, e.g., Nelson v. Redick*, 2023 WL 5409866, at *3 (M.D. Pa. Aug. 22, 2023) (noting that, unlike a heart attack or stroke, treatment for an unspecified medical issue is not an immediate threat to life).  The urgency of Major's medical need was further substantiated by the report of Dr. Quentin M. Orlando, which Major attached to his Amended Complaint. *See* ECF No. 98-1.  Thus, the urgent and emergency nature of his medical need prior to his hospitalization excused Major from having to grieve this aspect of his Eighth Amendment claim against Halligan.

But the emergency exception does not apply to the claim against Halligan based on her delay in providing his nitroglycerin medication after he returned from the hospital.  While Major's need for such medication is not in doubt—it was apparently prescribed upon his discharge from the hospital—nothing in the record supports that the delay constituted an incident

---

[4] Indeed, in *Downey*, the defendants argued unsuccessfully that in contrast to "a heart attack or stroke," which "demand[s] immediate treatment," Downey's glaucoma did not.  968 F.3d at 307.

of an urgent or emergency nature such that Major was excused from filing a grievance.  Indeed, the record confirms that Major did, in fact, file a timely grievance regarding the medication delay on May 23, 2017.  Major's invocation of the grievance process reflects that he did not regard the situation as urgent or an emergency.  Furthermore, nothing in his grievance indicated that he was then experiencing symptoms to support that the matter was urgent or an emergency.  In addition, the grievance officer's initial review response confirmed that Halligan provided the medication to Major after she reviewed his cardiology consultation report and that Major did not appeal the denial of the grievance after he received the grievance officer's explanation for the denial.

Major also argues that he exhausted his medication delay claim against Halligan upon the filing of Grievance No. 680083 because prison officials did not respond to the grievance within fifteen days as required by DC-ADM 804.  *See* ECF No. 116, p. 21.  Major contends that he submitted his grievance on May 23, 2017, but the Grievance Officer did not respond to it until June 22, 2017.  *Id.*  This argument misapprehends the relevant language of DC-ADM 804 and its application to the record.  DC-ADM 804 provides that, upon the filing of a grievance, the inmate "shall be provided [a response] within 15 working days *from the date the grievance was entered into the Automated Inmate Grievance Tracking System.*"  DC-ADM 804, Section 1, Part C, ¶ 5.g (emphasis supplied).  While Major signed Grievance No. 680083 on May 23, 2017, it was not entered into Automated Inmate Grievance Tracking System until May 31, 2017.  The initial review response was issued on June 22, 2017, which was exactly 15 working days later.[5]  Thus, the language of DC-801 and the calendar foreclose Major's argument that the grievance process

---

[5] This calculation excludes Wednesday, June 14, 2017, which is Flag Day, an official state holiday and thus not a "working day." *Independence Blue Cross of Ne. Pa. v. New Life Homecare*, 2008 WL 1902414, at *2 (M.D. Pa. Apr. 25, 2008) (citing 44 Pa. Stat. Ann. § 11 and 7 P.S. § 113(a) (i-ix)).  The Commonwealth is the only state to recognize Flag Day as a state holiday. *See* https://www.va.gov/opa/publications/celebrate/flagday.pdf (last visited 9/18/2023).

was unavailable to him or that he exhausted available grievance remedies based on a delay in the initial review response.

Based on the foregoing analysis, the Court concludes that Major was excused from grieving Halligan's Eighth Amendment claim based on her alleged deliberate indifference to his heart attack symptoms leading to his hospitalization, but that he failed to exhaust his administrative remedies regarding his Eighth Amendment claim based on Halligan's post-hospitalization delay in providing his nitroglycerin medication.

*Major's Eighth Amendment claim against Halligan based on alleged deliberate indifference to his heart attack symptoms is nevertheless time barred.*

State statutes of limitations and tolling rules generally govern § 1983 suits in federal court. *See Board of Regents v. Tomanio*, 446 U.S. 478 (1980). "[A] § 1983 claim is governed by the statute of limitations that applies to personal injury tort claims in the state in which such a claim arises." *Kach v. Hose*, 589 F.3d 626, 639 (3d Cir. 2009). Additionally, a state's tolling principles also govern § 1983 claims when they do not conflict with federal law. *Id.* Because Halligan's alleged misconduct occurred entirely in Pennsylvania, the Commonwealth's two-year statute of limitations on personal injury claims applies. *Wallace v. Kato*, 549 U.S. 384, 387-88 (2007) (statute of limitations for personal-injury torts in state where cause of action arose applies in § 1983 actions). *See also Johnston v. Wetzel*, 431 F. Supp.3d 666, 675 (W.D. Pa. 2019) (Pennsylvania state law claim most analogous to a § 1983 claim is a personal injury action, which is subject to the Commonwealth's two-year statute of limitations under 42 Pa. Cons. Stat. Ann.§ 5524).

The claim against Halligan that survived her exhaustion defense is based on Halligan's alleged deliberate indifference to his heart attack symptoms in May of 2017. Specifically, Major

alleges that he was under Halligan's care from May 7, 2017, until May 10, 2017, when he was transferred to UPMC Hamot. *See* ECF No. 98, ¶¶ 23-32. This means that any complaint based on the treatment he received from Halligan would have been due on or before May 10, 2019. *See Yurek v. Guiher*, 2019 WL 13269535, at *3 (W.D. Pa. Apr. 16, 2019) (noting that pursuant to the prisoner mailbox rule, a complaint is deemed to have been filed on the date the inmate signs it). Major signed and dated his original complaint in this case on December 28, 2020, more than seven months beyond the expiration of the statute of limitations. *See* ECF No. 6, p. 51. Thus, on the face of the pleadings, this claim against Halligan is time barred.

Major contends, however, that the "continuing violation" doctrine tolled or extended the limitations period on this claim. The continuing violation doctrine is an "equitable exception to the timely filing requirement" that applies "when a defendant's conduct is part of a continuing practice." *West v. Phila. Elec. Co.*, 45 F.3d 744, 754 (3d Cir. 1995) (*superseded in part by statute, Lilly Ledbetter Fair Pay Act,* Pub. L. No. 111-2, 123 Stat. 5 (2009)). This doctrine allows untimely actions to be considered timely "so long as the last act evidencing the continuing practice falls within the limitations period" by instructing the court to "grant relief for the earlier related acts that would otherwise be time barred." *Brenner v. Local 514, United Broths. of Carpenters and Joiners of America*, 927 F.2d 1283, 1295 (3d Cir. 1991). The Court of Appeals for the Third Circuit has held that "[t]o prevail on a continuing violation theory, … the plaintiff must show more than the occurrence of isolated or sporadic acts...." *Jewett v. Int'l Tel. and Tel. Corp.*, 653 F.2d 89, 91 (3d Cir. 1981). A "continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." *Sandutch v. Muroski*, 684 F.2d 252, 254 (3d Cir. 1982) (quoting *Ward v. Caulk*, 650 F.2d 1144, 1147 (9th Cir. 1981)), *abrogated on other grounds by Klehr v. A.O. Smith Corp.*, 521 U.S. 179 (1997)).

Courts consider three factors when determining whether a defendant's acts constitute a continuing practice or sporadic incident: (1) whether the subject matter involves similar conduct; (2) whether the conduct is recurring or isolated; and (3) whether the conduct is of an unchanging nature as to trigger an awareness of and duty to assert rights. *See Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001). The consideration of the "degree of permanence" is the most important factor to consider. *Id. See also Johnston v. Wetzel*, 431 F. Supp. 3d 666, 675–76 (W.D. Pa. 2019). "Indeed, the continuing violations doctrine does not apply to discrete acts of discrimination or other unconstitutional behavior." *Beckett v. Dep't Corr.*, 2014 WL 3696243, at *15 (M.D. Pa. July 24, 2014).

To save his claim against Halligan, Major would have to tether Halligan's deliberate indifference to some actionable conduct that occurred within two years of his filing suit. *See Muhammad v. NJ Dep't Corr.*, 396 Fed. Appx. 789, 793 (3d Cir. Oct. 5, 2010) (to successfully invoke the continuing violations doctrine, the plaintiff must show that "at least one act occurred within the filing period") (quoting *McAleese v. Brennan*, 483 F.3d 206, 218 (3d Cir. 2007)). The facts of this case preclude this. Major's surviving claim against Halligan is based on deliberate indifference to his heart attack symptoms in May 2017. Halligan's last involvement in Major's care also occurred in May 2017. The only actionable conduct alleged in the Amended Complaint to have occurred within the two-year statute of limitations was Herbik's failure to timely provide Major's nitroglycerin medication in "late 2021." ECF No. 98, ¶ 99. This failure occurred more than four years after Halligan's last involvement with Major, involved the conduct of a different doctor at a different correctional institution, and resulted in a separate discernable injury to Major. As this Court explained in *Ferreiras v. Rice-Grego*, the continuing

violations doctrine does not apply where an inmate complains of discrete instances of deficient

care by different providers, at multiple institutions, over a period of years:

> Courts in the Third Circuit have been reluctant to allow a prisoner
> plaintiff to invoke the continuing violations doctrine in the context
> of a Section 1983 action. Even if the subject matter of the alleged
> violations is largely consistent, it may not satisfy the first factor
> needed to invoke the doctrine if different defendants at separate
> institutions committed the violations. *See Woodell v. Wenerowicz*,
> CV 18-1098, 2019 WL 4139264, at *10 (E.D. Pa. Aug. 30, 2019)
> (finding on a motion to dismiss that plaintiff does not meet the first
> factor of the continuing violations doctrine when he alleges that
> different individuals, at separate institutions, denied him medical
> treatment for various issues (e.g., panic attacks, seizures) over
> several years).
>
> The issue of alleging separate actions by separate defendants also
> goes to the frequency analysis. It would be difficult to establish
> frequency if different individuals were violating a plaintiff's rights.
> *See Woodell* at *11. The Third Circuit seems to suggest that
> several months apart for each alleged violation would not meet the
> standard. *Spencer v. Courtier*, 552 Fed. Appx. 121, 123 (3d Cir.
> 2014) (unpublished) (commenting that the incidents of plaintiff
> being denied medication in January 2006, and then in April and
> October 2006, and then in January 2007, are "months apart."). In
> the end, what is certain is the Third Circuit's observation that
> courts have never set a specific standard for determining how close
> together the acts must occur to amount to a continuing violation.
> *Cowell v. Palmer Tp.*, 263 F.3d 286, 295 (3d Cir. 2001).

2021 WL 6498252, at *5 (W.D. Pa. Nov. 2, 2021), *report and recommendation adopted*, 2021

WL 6037585 (W.D. Pa. Dec. 21, 2021).

Although certain of the conduct alleged is similar in nature (e.g., delayed or inconsistent

providing of nitroglycerin pills), the alleged violations of Major's right by Halligan and Herbik

and the various other defendants in this action are essentially discrete and isolated events rather

than part of a continuing practice. As such, they preclude invocation of the continuing violations

doctrine to save Major's deliberate indifference claim against Halligan from her statute of

limitations defense. *See Runkle v. Pa. Dep't Corr.*, 2013 WL 6485344, at *5 (W.D. Pa. Dec. 10,

2013); *see also Kichline v. Consol. Rail Corp.*, 800 F.2d 356, 360 (3d Cir. 1986) ("[T]he continuing conduct of defendant will not stop the ticking clock of the limitations clock begun when plaintiff obtained the requisite information.  On discovering an injury, a claimant must choose to sue or forego that remedy.").  Halligan is therefore also entitled to judgment as a matter of law on this claim.

> *Major did not exhaust his claim against Herbik concerning the availability of nitroglycerin medication.*

The Court now turns to the claims against Herbik, the physician involved in Major's care at SCI-Fayette.  Major alleged that by "late 2021," DOC personnel at SCI-Fayette were aware of his medical needs, including his need for nitroglycerin medication, and that Herbik "refused to provide [him] with his nitroglycerin pills until after Major, once again, sought the assistance of the Court and counsel for Defendants."[6]  ECF No. 98, ¶¶ 99, 101.  Although the Amended Complaint included at least one other reference to Herbik, *see id.*, ¶ 119 ("Defendant Herbik … determined Major's medical care at SCI-Fayette was medically necessary" following unrelated health conditions), the only actionable conduct alleged against Herbik relates to his failure to provide Major's nitroglycerin pills.

As to the denial of nitroglycerin medication, there is nothing in Major's grievance record to indicate that he pursued his administrative remedies against Herbik.  The grievance record reveals that upon his arrival at SCI-Fayette, Major filed nine grievances.  The first grievance was filed on October 19, 2021, and the last was submitted on October 12, 2022.  *See* ECF No. 109-5,

---

[6] Here, Major references a letter he sent to the Court on October 6, 2021.  *See* ECF No. 50.  There, Major wrote that "here at SCI-Fayette within the STGMU Program they are denying and depriving me of my proper medication just like SCI-Greene did."  His correspondence does not mention Herbik nor does it indicate he served a copy of his letter on the Defendants.

p. 1.  Summarized graphically, the relevant grievance history during this time period is as

follows:

| Date Signed | Grievance | Issues Complained Of | Identification of Personnel | Exhausted to SOIGA? |
|---|---|---|---|---|
| 10/19/21 | 950592; ECF No. 109-3, p. 49 | Major was required to remain in 14-day quarantine upon arrival at institution despite being vaccinated against Covid-19 | None | Yes.  ECF No. 109-3, p. 48 |
| 11/01/21 | 952470; ECF No. 109-4, p. 45 | Major complains his cell had inadequate lighting | "6-2 Sgt." and "several staff" | No. Upheld by facility manager and lighting was fixed |
| 11/05/21 | 953392; ECF No. 109-3, p. 57 | Major informed "medical staff" of his heart condition yet OC spray was used in a neighboring cell; asked for more "nitro" – took 2 pills and "ran out" | Lt. "Matasic;" prison clergy | Yes.  ECF No. 109-3, pp. 56 |
| 11/8/21 | 953596; ECF No. 109-3, p. 65 | Corrections officer ignored Major's call button requesting medical assistance.  Claimed officer "laughed and joked" | "rover officer" | Yes.  ECF No. 109-3, p. 64 |
| 12/9/21 | 98134; ECF No. 109-4, p. 19 | Due process claim relating to the investigation of grievance number 953392 | Matiyasic, Riddle, Ohrman | No. Rejected by grievance coordinator; not proper way to appeal another grievance |
| 12/7/21 | 958447; ECF No. 109-4, p. 47 | Concerns claims relating to events that occurred at SCI-Greene | Zaken | No |
| 12/21/21 | 960143; ECF No. 109-4, p. 26 | Concerns claims relating to events that occurred at SCI-Greene | Zaken, Allen | No |
| 8/10/22 | 993093; ECF No. 109-4, p. 103 | Deprivation of nitro pills, chest and heart were in pain, officer who answered call button called medical but no medication was ever dispensed | "rover officers," | Yes.  ECF No. 114-2, p. 5. |

| Date Signed | Grievance | Issues Complained Of | Identification of Personnel | Exhausted to SOIGA? |
|---|---|---|---|---|
| 10/4/22 | 1001418, ECF No. 109-4, p. 89 | Loss of property | Unnamed "officers" | No |

Two of the foregoing grievances arguably relate to Major's claim based on the denial of nitroglycerin medication: Grievances Nos. 953392 and 993093. *See* ECF No. 109-3, p. 57, and ECF No. 109-4, p. 103. Although both grievances were exhausted through final appeal to SOIGA, Major did not satisfy the PLRA's exhaustion requirement as to Herbik because he did not identify him in either grievance. *See, e.g., Williams v. Wolf,* 2023 WL 2851981, at *10 (W.D. Pa. Jan. 19, 2023), *report and recommendation adopted,* 2023 WL 2399869 (W.D. Pa. Mar. 8, 2023), *aff'd sub nom. Williams v. Wetzel,* 2023 WL 4700650 (3d Cir. July 24, 2023); *Green v. Maxa,* 2020 WL 1249205, at *5 (W.D. Pa. Mar. 16, 2020) (granting summary judgment for those defendants the plaintiff failed to identify in his grievance in contravention of "the DC-ADM's directive that inmates identify the individuals involved in the event" that is the subject of the grievance).

Grievance No. 953392 concerns the use of OC spray in a neighboring cell, which caused Major to experience health problems such as vomiting blood. ECF No. 109-3, p. 57. He complains that a "LT totally ignored [his OC spray restriction] and sprayed OC spray directly into the cell next door." *Id.* He complained to "Lt. Matasic" (sic) and the "6-2 sgt." *Id.* Major "even asked them for more nitro one more pill I took two and ran out." *Id.* Here, he does not mention or even allude to any involvement on the part of Herbik. Instead he blamed exclusively Defendant Matiyasic for ignoring his requests. The denial of this grievance was upheld on final review due to a lack of evidence. *Id.,* p. 56.

Grievance No. 993093 also concerned the distribution of Major's heart medication, but it too failed to implicate Herbik. *See* ECF No. 109-4, p. 103. Major states that he was "deprived medical treatment today," namely his nitroglycerin pills. *Id.* He states that the officer who answered his call button told him that "medical" had been informed. *Id.* Although Major claimed he never received his medication, nothing in his grievance associates this deprivation with any act or omission by Herbik. *Id.* Indeed, Major's grievance does not fault the medical department, or by extension, Herbik, for the denial of his medication. The Court observes that on appeal to the facility manager, Major acknowledged that "it may have not been the medical department that deprived me of this access [to medication]." ECF No. 109-4, p. 100. Instead, Major blames DOC security personnel for the denial of his medication: "maybe you all never did get the call from staff; but my call button was pressed several times and medical assistance was required." *Id.* Thus, not only did Major not identify Herbik in this grievance or the appeals following its denial, he did not put Herbik or the institution "on notice of the persons claimed to be guilty of wrongdoing." *Ocampo v. Noel*, 2022 WL 288188, at *6 (M.D. Pa. Jan. 31, 2022) (citing *Spruill*, 372 F.3d at 227–32). Thus, Major has failed to exhaust his claim against Herbik. *See, e.g., Williams v. Pa. Dep't Corr.* 146 Fed. Appx. 554, 557 (3d Cir. 2005) (Pennsylvania inmate's failure to properly identify a defendant constitutes a failure to properly exhaust his administrative remedies under the PLRA).

Like his claim against Halligan based on her deliberate indifference to his heart attack symptoms, Major must argue the emergent nature of his medical condition—that is, his need for his nitroglycerin medication—exempted him from the three-stage grievance process of DC-ADM 804. *See, e.g., Prater v. Dep't of Corr.*, 76 F.4th 184, 204 (3d Cir. 2023) (citing *Downey*, 968 F.3d at 307)). Based on the specific allegations of the Amended Complaint, this argument

has potential merit.  Grievance No. 993093 specifically alleges that Major "was in need of my nitro pills badly – my chest and my heart was in so much pain and no one would give me medical assistance."  ECF No. 109-4, p. 103.  In contrast, the claim based on Halligan's delay in providing Major's nitroglycerin pills in May of 2017, included no allegations of severe distress comparable to what Major alleges he experienced in 2022.  The allegations of the Amended Complaint are sufficient to preclude the Court finding as a matter of law that the emergency exception to the grievance process does not apply.  Nor has Herbik offered a record, including relevant medical records, to negate the emergency exception.  Generally, "exhaustion determinations [should] be made before discovery."  *Walker v. Wetzel*, 2022 WL 17650456, at *1 (E.D. Pa. Dec. 13, 2022) (citing *Small v. Camden Cnty.*, 728 F.3d 265, 271 n.5 (3d Cir. 2013)).  But whether Herbik's refusal to provide Major with his nitroglycerin pills constituted an incident of an urgent or emergency nature cannot be determined on the current record.  Accordingly, the Court will deny Herbik's motion, without prejudice, and convene a hearing pursuant to *Small v. Camden Cnty.*, 728 F.3d 265 (3d Cir. 2013) to resolve the issue.  *See* 728 F.3d at 271 (holding that judges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury).  A hearing pursuant to *Small* will be scheduled via separate order.  The outcome of that hearing will determine whether Major's claim against Herbik survives Herbik's exhaustion defense.

IV.    Conclusion

The moving Defendants' motion will be granted as to all claims against Defendant Halligan and denied, without prejudice pending a hearing pursuant to *Small v. Camden Cnty.*, 728 F.3d 265 (3d Cir. 2013), as to Major's Eighth Amendment claim against Defendant Herbik.  The *Small* hearing will be scheduled by separate order.

A separate order will follow.

DATED this 29th day of September, 2023.

BY THE COURT:

RICHARD A. LANZILLO
CHIEF UNITED STATES MAGISTRATE JUDGE