IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

| | | |
|---|---|---|
| EDWARD MAJOR, | ) | |
| | ) | |
| Plaintiff | ) | 1:21-CV-00068-RAL |
| | ) | |
| vs. | ) | RICHARD A. LANZILLO |
| | ) | Chief United States Magistrate Judge |
| MICHAEL J. EDWARDS, | ) | |
| REGISTERED NURSE, *et al*, | ) | MEMORANDUM OPINION ON |
| | ) | DEPARTMENT OF CORRECTIONS |
| Defendants | ) | DEFENDANTS' MOTION TO DISMISS |
| | ) | |
| | ) | |
| | ) | IN RE: ECF NO. 253 |
| | ) | |

The twelve remaining Defendants in this action (identified *infra.*) have moved

to dismiss Plaintiff's Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

*See* ECF No. 253. For the reasons discussed below, the motion will be GRANTED in

part and DENIED in part.[1]

I.    Relevant Procedural History

Plaintiff Edward Major ("Major"), an inmate in the custody of the Pennsylvania

Department of Corrections ("DOC"), filed his initial *pro se* Complaint in this action

on February 4, 2021.  *See* ECF No. 6.  Major later obtained counsel, and, on

October 27, 2022, he filed a First Amended Complaint.  *See* ECF No. 98.  After

discovery concluded, Major was granted leave to file a Second Amended Complaint

("SAC"), which he did on September 20, 2024.  *See* ECF No. 206.  The SAC names

twelve employees of the DOC: Dr. Laurel R. Harry, DOC Secretary, Michael J.

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636.

1

Edwards (R.N., SCI-Albion), Lt. James Ochs (SHU, SCI-Albion), Paul Ennis (Deputy Superintendent, SCI Albion), Michael Clark (Facility Manager, SCI-Albion), Seth Erickson (SDU Unit Manager, SCI Fayette), William Nicholson (Health Care Administrator, SCI-Greene), Adam Shade (Corrections Officer), Nicholas Ohrman (Corrections Officer), James Bright (Corrections Officer), Keith Matiyasic (Corrections Officer), and Daniel Carns (Corrections Officer).[2]

The SAC asserts the following claims under 42 U.S.C. § 1983:

Count One:     Eighth Amendment excessive force claim against Defendant Shade;

Count Two:     Eighth Amendment deliberate indifference to serious medical needs claim against Defendants Nicholson, Edwards, and Bright;

Count Three:   Eighth Amendment deliberate indifference to serious medical needs claim against Defendants Shade, Clark, Matiyasic, Ochs, and Carns;

Count Four:    First Amendment retaliation claim against Defendants Clark, Ennis, Erickson, and Ohrman; and

Count Five:    Eighth Amendment deliberate indifference to serious medical needs claim against Defendant Harry (supervisory liability)

In support of their motion to dismiss, Defendants argue that (1) Major failed to exhaust his administrative remedies as to all claims except his Eighth Amendment claim against Defendant Matiyasic; (2) except for Defendant Harry, Eleventh Amendment immunity bars any claim against them in their official capacities; (3) Major has failed to allege facts to support the personal involvement of any Defendant except Defendants Shade and Matiyasic; (4) the SAC fails to state an Eighth

---

[2] The Court previously dismissed all claims against Defendants Halligan, Harney, Herbik, and Clayton. *See* ECF Nos. 98, 123, 262, 264.

2

Amendment excessive force claim against Defendant Shade; (5) the SAC fails to allege facts sufficient to state an Eighth Amendment deliberate indifference to medical needs claim against any Defendant; and (6) Major has failed to allege facts sufficient to state a First Amendment retaliation claim against Defendants Clark, Ennis, Erickson, or Ohrman. *See* ECF No. 254 at 7–30. Major has filed a response to the motion. *See* ECF No. 260.

II.    Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). To survive dismissal, the complaint must contain sufficient factual matter to state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For purposes of a motion to dismiss, the Court accepts as true the factual allegations of the complaint and views those facts and all reasonable inferences they support in the light most favorable to the plaintiff. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action," however, are not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 678.

"In deciding a motion to dismiss, the court must consider only the complaint, exhibits attached to the complaint, [and] matters of public record..." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). The court may consider documents "that a defendant attaches as an exhibit to a motion to dismiss" only if they are "undisputedly authentic" and "the [plaintiff's] claims are based [on them]." *Estate of*

*Roman v. City of Newark,* 914 F.3d 789, 796 (3d Cir.), *cert. denied sub nom. Estate of Roman v. City of Newark, New Jersey,* 589 U.S. 918 (2019) (quoting *Mayer,* 605 F.3d at 230).

III.    Factual Allegations of the SAC

A.    Medical Care at SCI-Albion (2017)

In May 2017, Major experienced chest pain while incarcerated at SCI-Albion and was transferred to the infirmary. ECF No. 206, ¶¶ 23–25. On May 7, 2017, Dr. Rekha Halligan evaluated him, diagnosed dehydration, and administered intravenous fluids. *Id.* ¶¶ 26–27. Major remained in the infirmary for approximately three days. *Id.* ¶ 30.

On May 10, 2017, an EKG revealed that Major was experiencing a heart attack. *Id.* ¶ 32. He was transported to UPMC Hamot, underwent an emergency cardiac catheterization, and received a stent to his right coronary artery. *Id.* ¶ 33. Upon discharge, Major was prescribed aspirin, atorvastatin, and nitroglycerin, and advised to follow a heart-healthy diet. *Id.* ¶ 36. After returning to SCI-Albion, Major requested access to nitroglycerin, and Dr. Halligan advised that she first had to consult a DOC cardiologist. *Id.* ¶¶ 39–40. The cardiologist later prescribed nitroglycerin and recommended an oleoresin capsicum ("OC") spray alert medical card for Major. *Id.* ¶¶ 41–43.

B.    OC Spray Exposure at SCI-Albion (February–December 2019)

On February 24, 2019, Major was involved in an altercation with a corrections officer, placed in restraints, and Defendant Shade was directed to deploy OC spray

against him. *Id.* ¶ 62. Major informed Shade about his cardiac condition, but Shade still deployed the spray. *Id.* ¶¶ 63–64. Major was then taken to the infirmary where his eyes were rinsed, but he did not receive nitroglycerin at that time. *Id.* ¶¶ 65–67. Defendant Ochs transported Major to the Restricted Housing Unit ("RHU"), where he was denied a shower. A subsequent medical follow-up consisted of a brief evaluation through the cell door on March 6, 2019. *Id.* ¶¶ 70–71, 76. Defendant Edwards later denied Major's request to be evaluated by a non-DOC physician. *Id.* ¶ 79. Between March and December 2019, Major wrote to attorneys and the Governor of Pennsylvania complaining about deliberate indifference to his medical needs. *Id.* ¶¶ 80, 82–83. Defendant Clark instructed corrections officers to destroy a draft of his civil rights complaint. *Id.*

C.    Transfers and Additional Allegations (2019–2022)

Major was transferred to SCI-Fayette in August 2019, where Defendants Ennis and Erickson placed him in the RHU and then a step-down unit, and Erickson denied him medical care. *Id.* ¶¶ 84–87. Defendant Ohrman removed Major from a shower line and confined him to his cell until shower time concluded; Major filed a Prison Rape Elimination Act ("PREA") grievance that he later agreed to withdraw. *Id.* ¶¶ 89–90.

Major was transferred to SCI-Greene in June 2020. *Id.* ¶ 92. There, Defendant Nicholson initially declined to approve nitroglycerin, though it was ultimately authorized, and he was not issued an OC spray alert card. *Id.* ¶¶ 100–102. On December 28, 2020, Major drafted a civil rights complaint. *Id.*, ¶ 105. He submitted

exhibits to his complaint for copying at the law library; those documents were missing when he returned to pick up his copies. *Id.* ¶¶ 105–108.

After Major returned to SCI-Fayette in late 2021, he was housed in a gang management unit, where Defendants Herbik and Bright refused his requests for nitroglycerin. *Id.* ¶¶ 110, 113. On November 4, 2021, OC spray was deployed against a neighboring inmate, and the spray migrated into Major's cell through the ventilation system. *Id.* ¶¶ 115–118. Major had warned Defendant Matiyasic about his cardiac condition beforehand. *Id.* Defendant Carns observed Major afterward but informed him only that a nurse would check on him, yet no nurse evaluated Major until the next day. *Id.* ¶¶ 121–122.

In March 2022, Major suffered from gastrointestinal bleeding and respiratory symptoms, including blood in his stool, hemoptysis, and shortness of breath. *Id.* ¶ 125. He sought medical attention from Defendant Ohrman. A hematoma test revealed internal bleeding, and after Major complained to DOC officials, he was transported to UPMC Hamot for evaluation. *Id.* ¶¶ 126–129.

IV.    Discussion and Analysis

    A. Defendants' request for dismissal under Rule 12(b)(6) based on the affirmative defense of failure to exhaust administrative remedies is procedurally improper because it relies on declarations that are not indisputably authentic.

Defendants first argue that Major failed to exhaust his administrative remedies as to all claims except his claim against Defendant Matiyasic for use of OC spray in a neighboring cell. Major offers two arguments in response. First, he asserts that this Court has already determined that Major exhausted his claims based on the

denial of his nitroglycerin medication. Second, he argues that Rule 12(g)(2) bars the Defendants from raising failure to exhaust administrative remedies as a basis for dismissal because they did not raise this affirmative defense in their earlier motion to dismiss. *See* ECF No. 260 at 5–8.

Regarding Major's first argument, the Court agrees that all claims relating to the denial of his nitroglycerin medication, including access thereto, have been exhausted. This Court previously held as much following a hearing conducted pursuant to *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 306 (3d Cir. 2020) and *Small v. Camden County*, 728 F.3d 265 (3d Cir. 2013). At that hearing, the Court found that the delay in providing Major with his prescribed nitroglycerin pills presented an "incident of an urgent or emergency nature" under DCADM 804, §1(A)(2). This finding meant Major was excused from following the usual three-step grievance procedure for that issue. *See* ECF No. 153. However, this determination was limited to Major's claims about access to his nitroglycerin medication. It does not mean that Major exhausted his administrative remedies for his other claims—those relating to different aspects of his medical care or his conditions of confinement.

Major argues that, under Federal Rule of Civil Procedure 12(g)(2), Defendants forfeited their failure-to-exhaust defense as a ground for dismissal because they did not raise it in their prior motions to dismiss his first Amended Complaint. *See* ECF No. 260 at 5–8. Rule 12(g)(2) requires a defendant to consolidate all then-available Rule 12 defenses in a single pre-answer motion and prohibits successive motions raising defenses "available to the party but omitted from its earlier motion." Fed. R.

7

Civ. P. 12(g)(2); *see also Leyse v. Bank of Am. Nat. Ass'n*, 804 F.3d 316, 320 (3d Cir. 2015). As explained below, however, Defendants' motion to dismiss based on the failure-to-exhaust defense must be denied not because they failed to raise it in a prior Rule 12 motion but because they have improperly raised it in their Rule 12(b)(6) motion.

A defendant is rarely permitted to raise a plaintiff's failure to exhaust administrative remedies in a Rule 12(b)(6) motion to dismiss. This is because "[f]ailure to exhaust is an *affirmative defense the defendant must plead and prove; it is not a pleading requirement for the prisoner-plaintiff.*" *Small v. Camden Cty.*, 728 F.3d 265, 268 (3d Cir. 2013) (emphasis added) (citing *Jones v. Bock*, 549 U.S. 199, 212, 216-17 (2007)). Accordingly, failure to exhaust may be raised in a motion to dismiss only where the failure to exhaust is apparent from the complaint itself or indisputably authentic documents properly before the court. *See Ray v. Kertes*, 285 F.3d 287, 297 (3d Cir. 2002); *Grp. Against Smog & Pollution, Inc. v. Shenango Inc.*, 810 F.3d 116, 127 (3d Cir. 2016) (holding that "courts may consider exhibits attached to a defendant's motion to dismiss if it is 'an undisputedly authentic document' and 'plaintiff's claims are based on the document'") (quoting *Pension Benefit Guar. Corp.*, 998 F.2d at 1196).

Defendants do not base their failure-to-exhaust defense on the face of Major's SAC or upon any document he attached as an exhibit to or relied upon in the SAC. Instead, they have attached two affidavits to their brief in support of their motion to dismiss. Each affidavit is authored by a representative of the Secretary's Office of

8

Internal Governance and Accountability ("SOIGA"), one by Michael Bell, and the other by Amanda West. Bell attests to various facts relating to Major's grievance record, including that SOIGA's "electronic records do not reflect any appeals of Grievance #946105 to the Facility Manager nor any subsequent appeals to SOIGA of Grievance #946105 submitted by Edward Major (LX6754)." ECF No. 254-1, p. 6. Similarly, West attests that she "reviewed the electronic record for the grievance and grievance appeals of Grievance #820912" and that the grievance was rejected as non-compliant with DOC policies and that Major did not appeal this determination. *Id.*, p. 10. Neither affidavit may be considered on a motion to dismiss.

The Court of Appeals for the Third Circuit has observed that where a defendant moves to dismiss based on a failure-to-exhaust defense and "the exhaustion issue turns on [ ] *indisputably authentic documents* related to [the inmate's] grievances," we may consider those documents "without converting [a motion to dismiss] to a motion for summary judgment." *Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004). But this statement was made in the context of deciding whether Spruill had procedurally defaulted his claims by failing to seek money damages in his grievances and by failing to name one of the defendants in the grievances. *See id.* at 232-235. The court stated that "[g]iven that the exhaustion issue turns on the indisputably authentic documents related to Spruill's grievances, we hold that we may also consider these without converting it to a motion for summary judgment." *Id.* at 223. As this Court has previously noted, the district court in *Spruill* considered the grievance documents attached as exhibits to the

9

defendants' motion to dismiss because Spruill referenced them in his complaint to show exhaustion despite that he had no pleading obligation to do so. *See Cooper v. Martucchi*, 2015 WL 4773450, at *2 (W.D. Pa. Aug. 12, 2015).   In this respect, the grievance documents in *Spruill* at least arguably satisfied the "indisputably authentic" and "based or relied on" requirements for consideration on a motion to dismiss. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).   These dual requirements severely limit a court's authority to consider grievance records on a motion to dismiss.   And, in this case, whether the plaintiff's own grievances are "indisputably authentic" documents is not an issue presently before this court.   Defendants have not produced grievance records.[3] Rather, the two affidavits upon which they rely attest to actions they assert Major took or failed to take during the grievance process.   Furthermore, the factual assertions of each affidavit are not based on the affiant's personal knowledge, but on electronic records reviewed by each that are not before the Court or available to Major.[4] Affidavits and declarations are not indisputably authentic documents. *See Washington v. Link*, 750 Fed. Appx. 84, 87 (3d Cir. 2018); *Escalera v. Harry*, 2016 WL 6694502, at *6 (M.D. Pa. Sept. 28, 2016), *report and recommendation adopted*, 2016 WL 6582065 (M.D. Pa. Nov. 7, 2016).   In *Washington*, the Court of Appeals explained

---

[3] Although Major filed certain grievance records as exhibits to his original complaint, *see* ECF No. 6-2, pp. 2-15, Defendants do not rely upon any of them to establish their exhaustion defense.

[4] Such affidavits could serve as a record for purposes of a motion for summary judgment, but Defendants elected not to move in the alternative for summary judgment and comply with the procedural requirements and safeguards of Western District Local Rule 56, including the filing of a concise statement of materials facts to which Major would respond and can state additional facts in opposition to the motion. *See* LCvR 56.

10

that declarations are neither "indisputably authentic for Rule 12(b)(6) purposes" nor "conclusive even at the summary judgment stage if they are controverted by other evidence...". 750 Fed. Appx. at 87. And the Court of Appeals has specifically held that "[r]eliance on declarations from prison officials or Corrections Department administrators requires conversion [to summary judgment]." *Berry v. Klem*, 283 Fed. Appx. 1, 3 (3d Cir. 2008). In this case, the Court declines to convert Defendants' motion to one for summary judgment because Major has not been given notice that the Court might do so. And because the affidavits proffered by Defendants in support of their exhaustion defense are not properly considered on a motion to dismiss, their motion will be denied to the extent it raises this affirmative defense. Defendants may ultimately prevail on this defense as to some or all of Major's non-nitroglycerin claims, but not today.

At the same time, the Court rejects Major's argument that Defendants have forfeited or waived the exhaustion defense because they failed to raise it in their prior motion to dismiss. As explained, the failure-to-exhaust defense is not a defense that a defendant is obliged to raise under Rule 12; it is an affirmative defense that a defendant must plead and ultimately prove. *Small*, 728 F.3d at 268. Defendants may at any time move for summary judgment on this defense. *See* Fed. R. Civ. P. 56(b) (a party may file a motion for summary judgment "at any time until 30 days after the close of all discovery").[5] If they do so, they must follow the procedural

---

[5] As a matter of general practice, the court permits a defendant to file an early motion for summary judgment raising the failure-to-exhaust-defense without prejudice to the defendant's right to later file a motion for summary judgment on the merits of the plaintiff's claims. This approach is consistent with the Court of Appeals' mandate that the district court resolve exhaustion issues as a threshold

requirements of Rule 56 and LCvR 56, including the filing of a concise statement of material facts, which may rely on affidavits and other documents beyond those attached or relied upon in the SAC.

Defendants also have not forfeited under Rule 12(g)(2) the other grounds for dismissal raised in their current motion. Most of these grounds are essentially "failure to state a claim" arguments that challenge the sufficiency of the facts alleged to support the essential element of the claim. To the extent the SAC changed or added factual allegations or theories of liability from those of the first Amended Complaint, Defendants have the right to move to dismiss the affected claims under 12(b)(6). Here, the changes to the SAC are sufficient to spare Defendants from the consolidation rule of Rule 12(g)(2). Furthermore, even if the court were to invoke Rule 12(g)(2) and deny Defendants' motion based on the consolidation rule, they would be free to raise any "failure to state a claim" argument in a motion for judgment on the pleadings. Rule 12(h)(2) specifically preserves the failure-to-state-a-claim defense from waiver and authorizes a defendant to raise it in a motion for judgment on the pleadings. *See* Fed. R. Civ. P. 12(h)(2). And any motion for judgment on the pleadings asserting failure to state a claim would be evaluated under the same standard as a Rule 12(b)(6) motion to dismiss. *Ferencz v. Medlock*, 905 F. Supp. 2d 656, 663 (W.D. Pa. 2012).

For the foregoing reasons, Defendants' motion to dismiss is denied to the extent it is based on the failure-to-exhaust administrative remedies affirmative defense.

---

matter before reaching the merits of the plaintiff's claims. *See Brown v. Sprenkle*, 827 Fed. Appx. 229, 231 (3d Cir. 2020).

The Court turns next to the merits of the DOC Defendants' Rule 12(b)(6) arguments and addresses each count of the SAC in turn.[6]

### B. The SAC alleges facts sufficient to support Major's excessive force claim against Defendant Shade at Count I.

The Eighth Amendment's proscription against cruel and unusual punishment protects prisoners from the unnecessary and wanton infliction of pain. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). In evaluating an Eighth Amendment excessive force claim, a court asks "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 7. This inquiry requires consideration of several factors, including "the need for the application of force, the relationship between the need and the amount of force that was used, [and] the extent of injury inflicted." *Id.* (citing *Whitley v. Albers*, 475 U.S. 312, 321 (1986)).

Major's allegations adequately support the viability of Major's excessive force claim against Shade. First, Major alleges that Shade sprayed him with OC spray only after an altercation had ended and while he was already restrained in handcuffs and lying face-down on the ground. *See* ECF No. 206, ¶ 62. The application of force after a threat has been neutralized raises substantial questions about whether the force was necessary or was instead applied maliciously. *See Brooks v. Kyler*, 204 F.3d

---

[6] Defendants argue that they are immune from Major's damages claims to the extent he brings them against them in their official capacity. *See* ECF No. 254, pp. 11-13. This argument is moot, however, because Major has clarified that he has not sued Defendants in their official capacities. *See* ECF No. 260, pp. 11-12.

13

102, 106 and 109 (3d Cir. 2000) (holding that jury could find excessive force where officers continued to strike arrestee after he had been subdued).

Second, Major states that he expressly informed Shade that he had a serious heart condition and that a DOC cardiologist had determined that OC spray should not be used against him. ECF No. 206, ¶ 63. Shade allegedly sprayed Major directly in the face despite these warnings. *Id.*, ¶ 64. A jury may reasonably find that Shade's use of OC spray under these circumstances was not part of a good-faith effort to maintain or restore discipline but was done maliciously to cause harm. *See Caldwell v. Moore,* 968 F.2d 595, 600 (6th Cir. 1992) (recognizing that pepper spray can constitute excessive force depending on circumstances of its use).

Third, Major alleges that Shade made statements demonstrating indifference to his serious medical needs, including "stop bitching, fuck your nitro, if you die then it's on you, not me. I don't give a damn about your medication." *Id.*, ¶ 67. Although such statements are not independently actionable, they may be considered as evidence that the force was applied maliciously and sadistically rather than in a good-faith effort to maintain discipline.

Finally, Major alleges that after Shade sprayed him with OC spray, he directed infirmary staff to confiscate or withhold his medically necessary nitroglycerin pills. ECF No. 206, ¶¶ 67-68. A reasonable jury may find that such conduct supports both malicious intent for purposes of an excessive force claim and, as discussed later in this Opinion, deliberate indifference to Major's serious medical needs, either or both

14

of which support an Eighth Amendment claim. Accordingly, Defendants' motion to dismiss Count I of the SAC will be denied.

    C. The SAC states an Eighth Amendment deliberate indifference to medical needs claim against Defendants Nicholson, Shade, Ochs, and Bright but not against Defendants Edwards, Clark, Matiyasic, and Carns.

At Count Two, the SAC claims that Defendants Nicholson, Bright, and Edwards acted with deliberate indifference to Major's serious medical needs. At Count Three, the SAC asserts the same theory of liability against Defendants Shade, Ochs, Clark, Matiyasic, and Carns. Nicholson and Bright are prison healthcare officials while Edwards, Shade, Ochs, Clark, Matiyasic, and Carns are nonmedical prison guards or administrative officials. After a discussion of the elements of an Eighth Amendment deliberate indifference to medical needs claim, the court will evaluate the sufficiency of Major's claim against each of these eight Defendants.

To state a claim for deliberate indifference to serious medical needs, the plaintiff must allege facts that satisfy both objective and subjective elements. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Pearson v. Prison Health Servs.*, 850 F.3d 526, 534 (3d Cir. 2017). First, the allegations must objectively support that the plaintiff had a serious medical need. A medical need is "serious" where it has been diagnosed by a physician as requiring treatment or is so obvious that a lay person would easily recognize the necessity for a doctor's attention. *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). Conditions that result in chronic pain, significant injury, or a substantial risk of serious harm if untreated satisfy this standard. *See Concepcion v. Russell*, 2025 WL 2447792, at *4 (E.D. Pa. Aug. 25, 2025)

(citing *Atkinson v. Taylor*, 316 F.3d 257, 266 (3d Cir. 2003)). Major's cardiac condition easily satisfies the serious medical need element of the claim. Second, the allegations must support a plausible inference that each defendant acted with "deliberate indifference" to that serious medical need. Deliberate indifference is a subjective standard that requires the official to have known of and disregarded an excessive risk to inmate health or safety. *Farmer v. Brennan,* 511 U.S. 825, 837–40 (1994); *Pearson,* 850 F.3d at 535. It thus requires a showing more blameworthy than negligence or medical malpractice. *Id.* Allegations of misdiagnosis, medical error, or disagreement with the course of treatment, without more, do not state a constitutional claim. *Weigher v. Prison Health Servs.*, 402 Fed. Appx 668, 670 (3d Cir. 2010) (per curiam) (stating that claim of misdiagnosis sounds in negligence as a malpractice suit and is not deliberate indifference). Deliberate indifference may be found where a prison official (1) intentionally refuses to provide medical care, (2) delays necessary medical treatment for non-medical reasons, (3) prevents a prisoner from receiving needed or recommended treatment, or (4) persists in a course of treatment known to be ineffective in the face of a substantial risk of serious harm. *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999); *Lanzaro*, 834 F.2d at 346–47; *Spruill v. Gillis*, 372 F.3d 218, 235–36 (3d Cir. 2004).

Where a plaintiff's theory is premised on a delay in treatment, the complaint must plausibly support that the delay was attributable to non-medical reasons and that it resulted in harm or unnecessary pain. *Lanzaro*, 834 F.2d at 347; *Durmer v. O'Carroll*, 991 F.2d 64, 68–69 (3d Cir. 1993).

16

### 1. Nicholson

Major alleges that for reasons not grounded in medical judgment, Defendant Nicholson personally refused to approve his prescribed nitroglycerin for approximately one year despite Major's ongoing complaints of severe chest pain and risk of another heart attack, and that Nicholson relented only after Major sought court intervention and defense counsel's involvement. *See* ECF No. 206, ¶¶ 96, 98-102, 113. Major also alleges that despite knowing of his medical condition, Nicholson failed to give him an OC spray alert card. *Id.*, ¶ 102. These allegations, accepted as true, support a plausible inference that Nicholson knowingly delayed necessary medical treatment for non-medical reasons. While Major acknowledges that his medication was eventually approved, this does not necessarily negate a finding of deliberate indifference based on a prolonged and unjustified delay in treatment. *See Rouse*, 182 F.3d at 197; *Washam v. Prince*, 2025 WL 3634246, at *4 (M.D. Pa. Dec. 15, 2025) (citing *Rouse*). Accordingly, Defendants' motion to dismiss Major's Eighth Amendment claim at Count II will be denied as to Nicholson.

### 2. Bright

Like his allegations against Nicholson, Major alleges that Defendant Bright failed to provide his prescribed nitroglycerin medication despite knowledge of Major's cardiac condition and that he did not do so until prompted by counsel. ECF No. 206, ¶¶ 113, 131. Bright argues that Major's allegations regarding the timing of receiving the nitroglycerin are inconsistent and therefore implausible. At the Rule 12(b)(6) stage, however, the Court may not resolve factual disputes or weigh competing

reasonable inferences based on the facts. *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210–11 (3d Cir. 2009). The SAC plausibly alleges that Bright, like Nicholson, had knowledge of Major's serious medical need but nevertheless delayed or withheld prescribed medication for non-medical reasons. These allegations are sufficient at the pleading stage to state an Eighth Amendment claim against Bright. The Court will therefore also deny the motion to dismiss Count II against Bright.

### 3. Edwards

The SAC does not allege facts to support that Defendant Edwards was deliberately indifferent to Major's serious medical needs. Major alleges only that Edwards reviewed and denied several grievances concerning delays in receiving his nitroglycerin medication, the adequacy of his diet, and Major's request to see an outside physician. ECF No. 206, ¶¶ 47, 49, 79. These allegations support only Edwards' role in the administrative remedies review process, not personal involvement in the underlying medical decisions or the provision of care. The Third Circuit has repeatedly held that participation in the grievance process, standing alone, is insufficient to establish the personal involvement required for liability under § 1983. *See Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1988); *Heleva v. Walter,* 2022 WL 3657185, at *1 n.3 (3d Cir. Aug. 25, 2022) (affirming dismissal where allegations showed only grievance review and no personal involvement in the underlying violation); *Williams v. Clark,* 2022 WL 1402052, at *2 (3d Cir. May 4, 2022).

Major's allegations do not support an inference that Edwards possessed the requisite subjective knowledge or intent to be deliberately indifferent. Deliberate indifference requires that the defendant knew of and disregarded an excessive risk to inmate health or safety. *Farmer,* 511 U.S. at 837. Here, Edwards relied on representations that Major's prescriptions had been ordered and that the standard DOC diet was "heart healthy," and to have deferred to nursing staff regarding medical decisions. Such allegations reflect, at most, Edwards' reliance on medical judgments of other healthcare providers and do not suggest that Edwards consciously disregarded a known substantial risk to Major's health. *See Durmer,* 991 F.2d at 69 (non-medical officials are generally entitled to rely on medical professionals' judgments). In responding to a grievance regarding his demands for nitroglycerin pills, Edwards stated, "If you feel you need a Nitro contact security and they can contact the nurse. If the nurse feels you need the Nitro, it will be administered." ECF No. 206-7. Such response further confirms that Edwards, as a non-medical prison official, was deferring to the judgment of medical personnel regarding Major's medical needs and belies that he had decision-making authority over Major's care. Nor do the allegations of the SAC support that Edwards caused or prolonged the delay in Major's receipt of nitroglycerin medication. The SAC alleges that prescriptions had been ordered by the medical director and that Edwards denied grievances while the medication was allegedly delayed. The Third Circuit has drawn a distinction between officials who directly deny or delay treatment for non-medical reasons and officials who merely respond to grievances about treatment that is already being handled by

medical staff. The former potentially face liability while the latter typically do not. *See Rouse,* 182 F.3d at 197. Finally, Major's allegations regarding the denial of his request to be referred to an outside physician likewise do not state a claim against Edwards absent factual allegations that Edwards, rather than medical personnel, had authority to order such a referral and refused it for nonmedical reasons. Furthermore, prisoners "do not have a constitutional right to choose their own medical providers nor to obtain treatment of their own choosing." *Abdulrazzaq v. Trump,* 422 F. Supp. 3d 281, 291 (D.D.C. 2019) (citing *Roberts v. Spalding,* 783 F.2d 867, 870 (9th Cir. 1986) ("A prison inmate has no independent constitutional right to outside medical care additional and supplemental to the medical care provided by the prison staff within the institution."); *United States v. Rovetuso,* 768 F.2d 809, 825 (7th Cir. 1985) ("The Eighth Amendment guarantees a prisoner treatment of his serious medical needs, not a doctor of his own choosing.").

Because Major's allegations against Edwards are limited to grievance denials and matters to which he reasonably deferred to medical staff, the court will grant Defendants' motion to the extent it requests dismissal of the Eighth Amendment claim against Edwards.

### 4. Clark

Defendant Michael Clark served as the Superintendent at SCI-Albion. *Id.,* ¶ 7. In support of his Eighth Amendment claim against Clark, Major alleges that he sent at least seven inmate request slips to Clark relating to the prison's failure to provide Major with a heart-healthy diet. *Id.,* ¶ 48. Major also alleges that he informed Clark,

20

or Clark was otherwise made aware, that Major had a medical condition requiring ongoing access to medication, a heart-healthy diet, and protection from OC spray. Clark dismissed Major's inmate request slips for a heart-healthy diet after receiving a response from prison dietary personnel that the diet Major was receiving was heart healthy. *Id.* ¶¶ 48-49. These allegations, like those against Edwards, do not support Clark's personal involvement in any violation of Major's Eighth Amendment rights. Clark is a non-medical administrator who had no direct responsibility for Major's medical care or his diet. Although Major alleges that the care and diet he received were inadequate, he acknowledges that he was under the care of prison medical and dietary personnel. The obligations of nonmedical personnel such as prison administrators differ from those of medical personnel. *See Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004) (standard for deliberate indifference for claim of denial of proper medical care under the Eighth Amendment claims varies depending on whether the defendant is a medical defendant or a nonmedical defendant); *Miller v. Nowakowski*, 2025 WL 1938692, at *6 (W.D. Pa. July 14, 2025) (the duties owed to inmates by nonmedical personnel do not include a state law duty of reasonable care because no medical provider-patient relationship exists). Nonmedical prison personnel will not be deemed to have acted with deliberate indifference to the serious medical needs of an inmate under the Eighth Amendment "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." *Id.* Furthermore, a nonmedical prison administrator "cannot be deemed deliberately indifferent simply because the lay administrator did not

21

challenge the physician's care or respond directly to a prisoner's request for more or different treatment." *Chambers v. Adams*, 2023 WL 9100640, at *4 (W.D. Pa. July 31, 2023) (quoting *Judge v. Medical Dep't at SCI Greene*, 2007 WL 1576400, at *4 (W.D. Pa. May 31, 2007)) (internal quotation marks omitted). Major's request slips to Clark did not provide the type of notice necessary to support a finding that Clark was deliberately indifferent to Major's serious medical or dietary needs. Because the allegations of the SAC do not support Clark's personal involvement in any delay in Major's receipt of his nitroglycerin medication or a heart-healthy diet, Major's Eighth Amendment claim against Clark will be dismissed.

### 5. Shade

Although Defendant Shade is a corrections officer with no alleged responsibility for providing inmate medical care, he is alleged to have affirmatively directed infirmary staff to confiscate Major's nitroglycerin pills and to have personally refused Major's pleas for access to that prescribed medication. ECF No. 206, ¶ 67. Thus Shade is alleged to have actively interfered with Major's prescribed medical treatment despite his lack of responsibility or authority in this area. *Id.* Although the standard for finding deliberate indifference is more demanding for non-medical prison officials than medical personnel, even non-medical officials may face liability if they intentionally interfere with prescribed treatment or prevent an inmate from receiving needed medical care. *See Rouse*, 182 F.3d at 197; *Lanzaro*, 834 F.2d at 346-47. Because the allegations of the SAC support such a finding against Shade,

Defendants' motion to dismiss will be denied as to Major's Eighth Amendment claim against Shade.

### 6. Ochs

Defendant Ochs is another non-medical corrections officer. Major alleges that Ochs escorted him to the RHU following the use of OC spray and did not permit him to shower upon placement in his cell. ECF No. 206, ¶¶ 70–72. Major further alleges that Ochs was expressly informed that his chronic heart condition was exacerbated by OC spray, but nevertheless placed Major on a shower restriction following Major's exposure to OC spray that forced him to remain contaminated for more than twenty-four hours. ECF No. 206, ¶ 71. Major also alleges that he experienced chest pain, radiating pain to the arms, numbness in the left hand, pain in the back, neck, and jaw, shortness of breath, and nausea while he was denied a shower to decontaminate. ECF No. 206, ¶ 72. At the pleading stage, these allegations plausibly support an inference that Ochs knew of and disregarded a substantial risk of serious harm to Major. The Court of Appeals for the Third Circuit has recognized that the deliberate delay or denial of medical attention following an excessive force incident may constitute deliberate indifference, particularly where officials are aware of an inmate's heightened medical vulnerability. *See Giles v. Kearney*, 571 F.3d 318, 330 (3d Cir. 2009) (evidence that officers failed to provide medical care after use of force supported deliberate-indifference claim). The same reasoning applies to a deliberate delay of OC decontamination where a prison official knows that the prisoner is particularly vulnerable to adverse health effects from continued exposure to the

23

chemical agent.  And Ochs' status as a non-medical corrections officer does not immunize him from potential liability because a jury could consider his alleged conduct active participation in exposing Major to a known risk of harm.  Defendants' motion to dismiss will therefore be denied as to Count III against Ochs.

### 7. Matiyasic

Major alleges that, on November 4, 2021, Defendant Matiyasic deployed OC spray against a different inmate in a nearby cell and that the spray migrated through a vent into Major's cell and caused him to experience secondhand exposure.  ECF No. 206, ¶¶ 115–118.  Even accepting that Matiyasic was aware of Major's heart condition, the allegations of the SAC are too conclusory and vague to support a plausible inference that Matiyasic was deliberately indifferent to his condition.  The facts alleged do not support an inference that Matiyasic discharged OC spray against a different inmate knowing that it was likely to migrate through the ventilation system in a sufficient quantity and concentration to cause harm to Major. Defendants' motion will be granted as to Count III against Matiyasic.

### 8. Carns

Defendant Carns is another non-medical corrections staff member.  As described in the SAC, his relevant interaction with Major was isolated and brief. After Major's secondary exposure to OC spray on November 4, 2021, Major sought assistance by pressing his cell call button multiple times and by informing a chaplain and officers, including Carns, who passed by his cell that he was vomiting blood and needed help.  ECF No. 206, ¶ 121.  Carns told Major that a nurse would be around to

24

check on his condition, but a nurse did not visit and examine Major until the following day. *Id.* During that check, the nurse told Major that no one had told medical staff about his request for assistance the previous day. *Id.*, ¶ 124. The nurse examined Major and determined that he was "alright." *Id.*, ¶ 124. Although Major described his symptoms as including vomiting of blood, he acknowledges that he was examined by a nurse the following day who determined that his condition was not serious and did not require medical attention. While Major attributes comments to the nurse that indicate that several staff members, including a chaplain and Carns, "who passed by his cell," did not advise medical of his request for medical attention, he also acknowledges that he repeatedly used his call button to alert prison personnel of his complaints. While Major did not receive the immediate attention he believed he required, he was examined the following day, and the medical judgment of the examining nurse was that his condition required no treatment. These facts do not support a plausible inference that Carns acted with deliberate indifference to Major's serious medical condition. Accordingly, the Court will grant Defendants' motion to dismiss Count III against Carns.

D. Count IV of the SAC (First Amendment Retaliation) states a claim under 42 U.S.C. § 1983 against Defendant Clark but not against Defendants Ennis, Erickson, and Ohrman.

Count IV of the SAC asserts a First Amendment retaliation claim under 42 U.S.C. § 1983 against Defendants Clark, Ennis, Erickson, and Ohrman. ECF No. 206, p. 22. To state such a claim, the plaintiff must allege facts that plausibly establish three elements: (1) he engaged in constitutionally protected conduct; (2) a

25

state actor took adverse action against him sufficient to deter a person of ordinary firmness from exercising First Amendment rights; and (3) the plaintiff's protected conduct was a substantial or motivating factor in the state actor's decision to take the adverse action. *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016).  This framework reflects the balance between protecting inmates' First Amendment rights and affording appropriate deference to prison officials in the administration of penal institutions. *Rauser*, 241 F.3d at 334.

In the prison context, the filing of grievances, complaints to staff, and civil actions challenging prison conditions or official conduct constitutes protected activity under the First Amendment.  *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003); *Watson*, 834 F.3d at 422.  An inmate need not plead or prove that the underlying grievance was meritorious; it is sufficient that the conduct constituted a good-faith exercise of the right to petition for redress of grievances.  *Watson,* 834 F.3d at 422. At the same time, the First Amendment does not protect conduct that violates prison rules or constitutes threats, harassment, or disruptive behavior, and courts must remain mindful of the unique institutional setting in which prisoners' rights are exercised. *Id.* at 422–23.

The adverse-action element requires allegations that the defendant took action "sufficient to deter a person of ordinary firmness from exercising his constitutional rights." *Rauser*, 241 F.3d at 333.  The inquiry is objective and does not turn on whether the particular plaintiff was actually deterred. *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000).  In the prison setting, actions such as placement in restrictive

housing, loss of privileges, transfer to less desirable housing or institutions, issuance of false misconducts, confiscation of property, denial of program access, or other actions imposing more than *de minimis* hardship may qualify as adverse action. *Id.* at 225–26; *Watson*, 834 F.3d at 423. By contrast, trivial inconveniences or minor annoyances that would not deter a person of ordinary firmness do not satisfy this element. *Allah*, 229 F.3d at 225.

To plead causation, the prisoner must allege facts permitting a plausible inference that the protected conduct was a substantial or motivating factor in the adverse action. *Rauser*, 241 F.3d at 333; *Watson*, 834 F.3d at 422. At the pleading stage, such an inference may arise from allegations of unusually suggestive temporal proximity between the protected activity and the challenged action, a pattern of antagonism following the protected conduct, or statements or other circumstantial facts suggesting retaliatory motive. *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). Conclusory assertions that an official acted "in retaliation," without factual content linking the protected conduct to the adverse action, are insufficient to support a plausible inference of causation. *Watson*, 834 F.3d at 424.

Although not a part of a plaintiff's prima facie pleading burden, the Court of Appeals for the Third Circuit applies a burden-shifting framework once a plaintiff has alleged facts to support the essential elements of retaliation. If the plaintiff establishes a prima facie case, the burden shifts to the defendant to show that the same action would have been taken for reasons reasonably related to legitimate

27

penological interests even in the absence of the protected conduct. *Rauser*, 241 F.3d at 334. At the Rule 12(b)(6) stage, however, dismissal on this basis is appropriate only where the existence of a legitimate penological justification is apparent on the face of the complaint. *Watson*, 834 F.3d at 426.

### 1. Clark

The facts alleged in the SAC support plausible inferences as to each element of a retaliation claim against Defendant Clark. Both Major's sending of letters between March and December 2019, seeking the assistance of counsel and public officials, including the Governor of Pennsylvania, regarding his prison conditions, and his preparation of a civil rights complaint challenging treatment he believed to be deliberately indifferent to his serious medical needs, *see* ECF No. 206, ¶¶ 80-83, constitute protected conduct. *Mitchell*, 318 F.3d at 530 (recognizing that an inmate's efforts to seek legal redress—including communicating with counsel, petitioning public officials, and preparing or filing civil rights actions—constitute protected activity under the First Amendment). Clark's alleged direction to confiscate and destroy Major's civil rights complaint was an action sufficiently adverse to deter a person of reasonable firmness from exercising constitutional rights. *See Allah*, 229 F.3d at 225 (defining adverse action); *Mitchell*, 318 F.3d at 530–31 (holding that confiscation of legal materials and threats for filing grievances may support a retaliation claim). And the direct connection between Major's protected conduct and Clark's alleged adverse action, as well as the temporal proximity between the two satisfy the causation element of the claim. Because Major's allegations satisfy each

28

element of his First Amendment retaliation claim against Clark, Defendants' motion to dismiss will be denied as to his claim.

### 2. Ennis, Erickson, and Ohrman

In contrast to the allegations against Defendant Clark, the allegations against Defendants Ennis, Erickson, and Ohrman do not support a retaliation claim because they do not plausibly connect any of these Defendants to an adverse action. Instead, Major alleges, in generalized terms, that "the SCI–Albion Defendants" were aware of his heart condition, grievances, and efforts to bring a civil rights action. Such collective pleading, without factual allegations describing what any of these Defendants personally did, when they did it, and how their actions were causally connected to his protected activity and the confiscation or destruction of legal materials, is insufficient to state a retaliation claim against these three Defendants. *See, e.g., Chavarriaga,* 806 F.3d at 222. The SAC does not allege that Ennis, Erickson, or Ohrman confiscated Major's legal papers, directed their destruction, threatened Major, or otherwise took an adverse action against him in response to his protected conduct. The First Amendment retaliation claim at Count IV fails to state a claim against Defendants Ennis, Erickson, and Ohrman and will be dismissed as to these Defendants.

E. Count V fails to state an Eighth Amendment claim under 42 U.S.C. § 1983 against Defendant Harry in her individual capacity but a claim for injunctive relief against her in her official capacity may proceed.

Count V of the SAC asserts an Eighth Amendment claim under 42 U.S.C. § 1983 against Defendant Harry, the Secretary of the Department of Corrections, based

on allegations that she was deliberately indifferent to Major's serious medical needs. ECF No. 206, p. 24. Like any person against whom a claim is asserted under § 1983, a supervisory official such as Harry faces liability only if she was personally involved in a constitutional violation. The doctrine of respondeat superior does not apply in a § 1983 action. *Rode*, 845 F.2d at 1207.

A supervisory official's personal involvement may be supported by allegations that she: (1) established or maintained a policy, practice, or custom that directly caused the violation; (2) personally directed the unconstitutional conduct; or (3) had contemporaneous knowledge of the violation and acquiesced in it. *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004); *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316–20 (3d Cir. 2014) (recognizing supervisory liability for failure to implement adequate policies to prevent known risks to inmate safety), *rev'd on other grounds sub nom. Taylor v. Barkes*, 575 U.S. 822 (2015); *Palakovic v. Wetzel*, 854 F.3d 209, 224–28 (3d Cir. 2017) (allowing claims to proceed where plaintiffs alleged facts to support senior DOC officials were aware of systemic risks and failed to act).

Allegations that an official received grievances, letters, or complaints after the fact and factually unsupported allegations that an official acquiesced in or adopted a policy condoning misconduct do not support that official's personal involvement. *See Mincy v. Chmielsewski*, 508 Fed. Appx. 99, 104 (3d Cir. 2013); *Beale v. Wetzel*, 2015 WL 2449622, at *5 (W.D. Pa. May 21, 2015).

30

The SAC does not allege facts to support any basis for supervisory liability against Harry under § 1983. Major does not allege that Secretary Harry personally directed any use of OC spray against him, personally approved its use in circumstances posing a substantial risk to medically vulnerable inmates, or had contemporaneous, particularized knowledge of Major's specific medical contraindication and nonetheless acquiesced in exposing him to OC spray. Nor does the SAC identify a specific policy promulgated by Secretary Harry that mandates or authorizes the use of OC spray against medically vulnerable inmates. To the contrary, Major asserts that DOC policies recognize the need to protect medically vulnerable inmates from OC spray exposure, which undermines any inference that Secretary Harry implemented a policy encouraging or condoning unconstitutional conduct. Allegations that Secretary Harry failed to implement additional policies, trainings, or procedures are, without more, also insufficient to support personal involvement. *Iqbal*, 556 U.S. at 676 (rejecting supervisory liability premised on generalized failures to act); *Rode*, 845 F.2d at 1207.

While the foregoing principles preclude a § 1983 claim for damages against Harry in her individual capacity, they do not foreclose an official-capacity claim for prospective injunctive relief.[7] Major alleges he faces an ongoing and substantial risk of serious harm from OC spray exposure, that Secretary Harry possesses authority to prevent such exposure, and that absent injunctive relief he faces prospective

---

[7] Although Major has disclaimed any official capacity claims against the other DOC Defendants, he states that he is advancing an official capacity claim against Defendant Harry. *See* ECF No. 260, p. 11.

irreparable harm. These allegations are sufficient, at the pleading stage, to support a claim for prospective injunctive relief against Harry in her official capacity. *See Palakovic*, 854 F.3d at 223–28 (recognizing official-capacity claims for injunctive relief against senior DOC officials where plaintiffs alleged ongoing, systemic risks to inmate safety); *Barkes*, 766 F.3d at 316–20.

Accordingly, the Court will grant the Defendants' motion to dismiss Count V of the SAC to the extent it seeks damages against Harry in her individual capacity but deny the motion to the extent Count V seeks prospective injunctive relief against Harry in her official capacity.

V.    Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss Major's SAC will be GRANTED IN PART and DENIED IN PART.

The motion will be GRANTED as to (1) Count Two (deliberate indifference to medical needs) against Defendant Edwards only; (2) Count Three (deliberate indifference to medical needs) against Defendants Clark, Matiyasic, and Carns only; (3) Count IV (First Amendment retaliation) against Defendants Ennis, Erickson, and Ohrman only; and (4) Count V (deliberate indifference to medical needs) against Defendant Harry for money damages in her individual capacity. These claims will be dismissed with prejudice as Major has had multiple opportunities to amend and the court finds that further amendment would be futile and inequitable.

The motion will be DENIED as to (1) Defendants' request for dismissal of certain claims based on the affirmative defense of failure to exhaust administrative

remedies;[8] (2) Count Two (deliberate indifference to medical needs) against Defendants Nicholson and Bright; (3) Count Three (deliberate indifference to medical needs) against Defendant Shade and Ochs; (4) Count IV (First Amendment retaliation) against Defendant Clark; and (5) Count V (deliberate indifference to medical needs) against Defendant Harry for injunctive relief in her official capacity.

An appropriate Order follows.

BY THE COURT:

RICHARD A. LANZILLO
CHIEF UNITED STATES MAGISTRATE JUDGE

---

[8] This denial is without prejudice to Defendants' right to reassert the affirmative defense in a properly supported motion for summary judgment.

33